UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GERMAN HENRIQUEZ GARCIA,

Plaintiff,

v.

SERGIO ALBARRAN, et al.,

Defendants.

Case No.  26-cv-04839-EKL

**ORDER GRANTING PRELIMINARY INJUNCTION**

Re: ECF Nos. 1, 4, 5

Petitioner German Henriquez Garcia, who is originally from El Salvador, has lived in the United States for over 25 years.  He is married to an American citizen and is the father of four young children, all of whom are also American citizens.  On May 21, 2026, he and his brother were detained and arrested on their way to work.  Petitioner filed a habeas petition and a motion for a temporary restraining order ("TRO"), seeking his release from custody and to enjoin Respondents from re-detaining him without a pre-deprivation hearing or removing him.[1]  The general duty judge granted the TRO, ordered Petitioner's release, and set a briefing schedule on the motion for preliminary injunction.  The Court carefully reviewed the parties' briefs and heard

---

[1] Respondents include Sergio Albarran, Field Office Director of the San Francisco Immigration and Customs Enforcement Office; Todd Lyons, Acting Director of United States Immigration and Customs Enforcement; Markwayne Mullin, Secretary of the United States Department of Homeland Security; and Todd Blanche, Acting Attorney General of the United States, acting in their official capacities (collectively, "Respondents").  Respondents seek to have all but Petitioner's immediate custodian stricken.  *See* Resp'ts Br. at 17-18, ECF No. 17.  This request is denied without prejudice.  As noted by Petitioner, Respondents have not demonstrated the futility of naming multiple individuals where Petitioner's immediate custodian cannot provide the complete relief sought.  *See* Pet'r Reply Br. at 13-14, ECF No. 21 (quoting Resp'ts Br. at 18-19 ("Petitioner's immediate custod[ian] cannot provide any relief besides release from custody.")).

United States District Court
Northern District of California

argument on June 4, 2026.  For the reasons stated below, the Court GRANTS Petitioner's motion for a preliminary injunction as modified.

## I.    BACKGROUND

Petitioner is a 36-year-old citizen of El Salvador who entered the United States without status in approximately 2000.  Decl. of Officer Emmanuel Avila ¶ 6, ECF No. 17-1 ("Avila Decl."); Pet'r Writ for Habeas Corpus ¶ 2, ECF No. 1; Form I-213 at 1, ECF No. 21-2 Ex. A ("Form I-213").  Since that time, Petitioner has continued to live in the United States where he works as a landscaper and he and his wife are raising their four young children together.  Decl. of Heliodoro Moreno ¶ 8, ECF No. 4-2 ("Moreno Decl."); Decl. of Petitioner Henriquez Garcia ¶ 5, ECF No. 21-1 ("Henriquez Decl.").  His wife and his children are United States citizens.  Moreno Decl. ¶ 8.

Shortly after entering the United States, Petitioner filed an application for work authorizations (Form I-765) and an application for Temporary Protected Status (Form I-821) ("TPS"), which were granted in 2003 and 2004, respectively.  *See* Form I-213 at 3.  From 2002 until 2018, Petitioner continuously applied and was renewed for TPS and work authorizations.  *Id.* at 3-5.  The Record of Deportable/Inadmissible Alien (Form I-213) indicates that Petitioner's TPS application was approved twelve times, and his work authorization application was approved eleven times.  *Id.*

In 2018, Petitioner again submitted his application for TPS renewal.  In July of that year, the U.S. Citizenship and Immigration Services ("USCIS") sent Petitioner a notice of an "intent to deny" letter, requesting further information about traffic infractions from 2012 to 2014, and two misdemeanor, drug-related charges from 2014 and 2017.  Avila Decl. ¶ 16 & Ex. 2; *see also* Form I-213 at 5.  Petitioner did not provide the requested information.  In November 2018, USCIS sent a letter denying Petitioner's re-registration and withdrawing his TPS.  Avila Decl. ¶ 17 & Ex. 3.  Petitioner attests that he never received the letters, and that at the time, he "wondered if the [renewal] letter had gotten lost or if something else had happened."  Henriquez Decl. ¶¶ 3-4.  Petitioner further attests that he allowed his TPS to lapse in 2020, due to financial constraints during the pandemic, unaware that it had already been withdrawn.  *Id.* ¶¶ 5-6.

United States District Court
Northern District of California

2

On the morning of May 21, 2026, "ICE conducted an operation to identify and apprehend Petitioner along with another alien [his brother] residing at the same address subject to immigration enforcement action."  Avila Decl. ¶ 18; *see also* Form I-213 at 2.  Petitioner and his brother were stopped and arrested while driving to work.  Henriquez Decl. ¶ 8; Avila Decl. ¶¶ 18-19; Form I-213 at 2.  That same day, an administrative arrest warrant (Form I-200) was issued for Petitioner's arrest.  Avila Decl. ¶ 19 & Ex. 4.  As noted below, the parties dispute whether the arrest warrant was issued before or after Petitioner's arrest.  Petitioner was also placed into removal proceedings.  Avila Decl. ¶ 20.

Later that same day, Petitioner's attorney filed the underlying habeas petition and TRO.  ECF Nos. 1, 4.  The general duty judge granted the request for a TRO *ex parte* and ordered Petitioner's release.  ECF No. 5 (Freeman, J.).  Petitioner was released on May 23, 2026.  ECF No. 14.  Following Petitioner's release, the government filed its response to the order to show cause regarding why a preliminary injunction should not issue, and Petitioner filed his reply.  The Court held a preliminary injunction hearing on June 4, 2026, during which the parties stipulated to extend the TRO to July 3, 2026.  ECF No. 22.  After the hearing, the parties provided supplemental briefs as ordered by the Court.  Resp'ts Supp. Br., ECF No. 23; Pet'r Supp. Br., ECF No. 24.

## II.    LEGAL STANDARD

The analysis at the TRO and preliminary injunction stages are "substantially identical." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  In order to obtain a preliminary injunction, Petitioner must establish that:  (1) he is likely to succeed on the merits, (2) he faces a likelihood of irreparable harm in the absence of a preliminary injunction, (3) the balance of equities weigh in his favor, and (4) the injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied."  *Friends of the Wild Swan v.*

United States District Court
Northern District of California

*Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (citation modified). "Where, as here, the party opposing the injunctive relief is a government entity, the third and fourth factors – the balance of equities and the public interest – merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

### III.    DISCUSSION

Petitioner argues that a preliminary injunction is warranted because he has a substantial liberty interest arising from his long-term, detention-free residence in the United States, and that detention may not be imposed absent a pre-deprivation due process hearing. Pet'r Br. at 4-8; Pet'r Reply Br. at 3-5, 11-12. As discussed below, the Court finds that Petitioner has demonstrated "serious questions" going to the merits of his procedural due process claim, that he is likely to suffer irreparable harm absent a preliminary injunction, and that the balance of hardships tips sharply in his favor.

#### A.    Serious Questions as to the Merits

In the TRO, the general duty judge found that Petitioner had demonstrated a likelihood of success on the merits of his claim that his ongoing detention violated his Fifth Amendment Due Process rights, and that "the Due Process Clause entitles [him] to a bond hearing before an immigration judge prior to any arrest or detention." ECF No. 5 at 3 (Freeman, J.). In response to the order to show cause that issued, Respondents rely heavily on their well-worn argument that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), and that Petitioner cannot claim any greater process than what is afforded under that statute. Resp'ts Br. at 5-17. In the alternative, Respondents argue that even if 8 U.S.C. § 1226(a)'s discretionary bond framework applies, due process only requires a post-detention bond hearing, in which Petitioner should bear the burden of demonstrating that he is not a flight risk or a danger to the community. *Id.* at 17.

The Court briefly addresses the statutory question, before turning to the due process analysis and the related impact, if any, of the administrative arrest warrant.

#### 1.    Applicable Statutory Provision

While recognizing that the majority of district courts, including "[e]very court in this district to have considered these questions," have rejected the government's position, Respondents

United States District Court
Northern District of California

United States District Court
Northern District of California

argue that 8 U.S.C. § 1225(b)(2)(A), rather than 8 U.S.C. § 1226(c), applies to noncitizens in Petitioner's posture. Resp'ts Br. at 5 (quoting *Bautista Pico v. Noem*, No. 25-cv-8002, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025), *appeal docketed*, No. 26-459 (9th Cir. Jan. 22, 2026)). Specifically, Respondents argue that Petitioner "seeks admission" under § 1225(b)(2)(A) because he was not admitted when he entered the country in 2000. As noted by the parties, there is a growing circuit split on this issue, with the majority of circuits holding that § 1226(a) applies in these circumstances. *Compare Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026) (holding that 8 U.S.C. § 1226(a), *not* § 1225(b)(2)(A), applies to noncitizens "who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter"), *Lopez-Campos v. Raycraft*, 175 F.4th 713, 733-34 (6th Cir. 2026) (same), *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) (same), *and Hernandez Alvarez v. Warden, Fed. Det. Ctr.*, 175 F.4th 1258, 1276 (11th Cir. 2026) (same), *with Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502-08 (5th Cir. 2026) (holding that all noncitizens without legal admission present in the United States are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)), *and Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026) (same).[2]

The Court declines to depart from its previous reasoning set forth in *Aldana Serrano v. Albarran*, No. 25-cv-08408-EKL, 2025 WL 4110874, at *6 (N.D. Cal. Nov. 28, 2025), and follows the majority of district and circuit courts that have reached this question. *See, e.g., Barbosa da Cunha*, 175 F.4th at 69 ("Today, although we part ways with two other circuits that have addressed this question, we join the overwhelming majority of federal judges across the Nation to consider it and conclude that the government's novel interpretation of the immigration statutes defies their plain text."). In doing so, the Court concludes that Petitioner's circumstances are incompatible with those envisioned under § 1225. Petitioner entered the country without inspection, over 25 years ago. In the subsequent years, he has lived, worked, and raised a family

---

[2] Pending before the Ninth Circuit is *Rodriguez Vazquez v. Hermosillo*, No. 3:25-cv-05240-TMC, *appeal docketed*, *Rodriquez Vazquez v. Bostock*, No. 25-6842 (9th Cir. Oct. 29, 2025), which presents the same question.

in the United States, and was repeatedly granted TPS and employment authorization by the government.  Accordingly, Petitioner is not subject to mandatory detention under § 1225(b)(2)(A), and any detention of him is governed by § 1226(a).

### 2.    Due Process

Petitioner has also demonstrated serious questions going to the merits of his procedural due process claim.  The Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment – from government custody, detention, or other forms of physical restrain – lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation modified).  "It is well established that the Fifth Amendment entitles aliens to due process of law in [removal] proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993); *accord Demore v. Kim*, 538 U.S. 510, 523 (2003) (applying obligations to removal pursuant to 8 U.S.C. § 1226(c)).

In evaluating procedural due process claims, courts first assess whether the petitioner was "deprived of a constitutionally protected liberty or property interest," and then assess "whether that deprivation was accompanied by sufficient procedural protections."  *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022).  Under this second step, in order to determine whether the procedures are constitutionally sufficient, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

### a.    Constitutionally Protected Liberty Interest

At this first step, the Court finds that Petitioner has demonstrated a protected liberty interest in remaining free from detention.  "While the liberty interests of U.S. citizens compared to noncitizens 'are not coextensive,' the Fifth Amendment nonetheless 'entitles [noncitizens] to due process of law in deportation proceedings.'"  *Abdeltawab v. Armant*, No. 26-cv-01520-MWF (DTB), 2026 WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205-06 (9th Cir. 2022)) (brackets in original).  Numerous district courts in this Circuit have held that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody []he has a protected

United States District Court
Northern District of California

United States District Court
Northern District of California

liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *see, e.g., R.C.C. v. Noem*, No. 1:26-cv-00373-TLN-EFB, 2026 WL 369796, at *3 (E.D. Cal. Feb. 10, 2026); *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025) ("[A]s courts have repeatedly recognized, conditional release from physical restraint gives rise to a protected liberty interest." (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))).

Courts also apply this principle to individuals "who have never been in immigration custody," finding that "years of deliberate acquiescence by" the government may give rise to a liberty interest in being free from detention. *Abdeltawab,* 2026 WL 1045564, at *2; *Kharitonova v. Albarran*, No. 3:26-CV-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release her, it made a decision not to detain her in the first place[.]" (emphasis omitted)); *cf. Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. 2025) (holding that detainee who had resided in the United States for over 25 years after entering without inspection or legal status had a cognizable liberty interest), *aff'd,*175 F.4th 713, 734 (6th Cir. 2026) (affirming that "Petitioners were due individualized bond hearings in light of the significant time they have spent within the interior of the United States"); *Anderson v. Chernut*, No. 1:26-CV-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) ("[T]he government has been aware of petitioner's presence in the United States for years" and its "decision not to detain petitioner created a liberty interest in her continued release…[e]ven though petitioner's [status] expired[.]"); *Boso v. Warden of the Golden State Annex Det. Facility*, No. 1:26-CV-01790-KES-SAB-HC, 2026 WL 1174643, at *3 (E.D. Cal. Apr. 30, 2026) (finding that petitioner maintained liberty interest in his continued release when he entered the United States without inspection, after DACA status was subject to termination because of a felony conviction), *report and recommendation adopted*, No. 1:26-CV-01790-KES-SAB (HC), 2026 WL 1389432 (E.D. Cal. May 18, 2026).

Respondents argue that this line of cases and their reasoning is "flawed." Resp'ts Br. at 7. Respondents assert that "Petitioner has not established an event in his immigration history that would give rise to a constitutionally protected liberty interest," *id.*, and that "Petitioner does not accrue a constitutionally protected liberty from the *lack* of a detention," *id.* at 8. The Court

7

disagrees.  Here, Petitioner had not previously been detained by ICE during the 26 years he has been in the United States.  Petitioner's first work authorization application was in 2002; thus, for approximately 24 of those years, the government was presumably aware of his presence in the country.  In addition, during each of his many renewals for TPS and his work authorization, the government did not seek to place Petitioner in removal proceedings.  During the intervening years, Petitioner established a family with his wife and their four children, all of whom are U.S. citizens.  Despite two "intent to deny" letters issued in 2015 and 2018, *see* Avila Decl. ¶¶ 5, 16 & Ex. 2, and the decision to withdraw TPS in 2018, the government did not seek to detain him until 2026.  Given the facts presented here – including Petitioner's presence in the United States for over 25 years, the government's knowledge of the same for two decades, and its acquiescence to his remaining in the country for years following the denial of his TPS renewal – Petitioner established a protected liberty interest in remaining free from detention.  *See, e.g.*, *Kharitonova*, 2026 WL 531441, at *2.[3]

### b.  *Mathews* Analysis

At the second step, the Court applies the three-part test set forth in *Mathews v. Eldridge* by evaluating:  (1) the private interest; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the government's interest.  424 U.S. at 335.  Each factor weighs in Petitioner's favor.

As discussed above, Petitioner has established a significant liberty interest in remaining free from detention.  As to the second factor, the risk of an erroneous deprivation of Petitioner's

---

[3] Respondents assert that Petitioner fails to provide any legal authority for the proposition that the *lack* of a detention may rise to the level of a constitutionally protected liberty interest, and they attempt to distinguish *Kharitonova* by asserting that "ICE had never previously encountered Petitioner" prior to placing him in removal proceedings.  Resp'ts Br. at 7.  This argument ignores Petitioner's multiple communications with UCSIS related to his TPS and work authorizations.  *See Kharitonova*, 2026 WL 531441, at *2 ("The government's insistence Petitioner lacks a liberty interest because it never before sought to detain her is specious. . . . Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained.").  Moreover, as in *Kharitonova*, "[t]he government's position [that] Petitioner does not have the same liberty interest is unsupported by any legal authority."  *Id.*; *see also* Resp'ts Br. at 7-8.

liberty interest is high without a pre-detention hearing. *Abdeltawab*, 2026 WL 1045564, at *6 ("The risk is especially pronounced here, where there is no reason to believe that Petitioner is or has been previously determined to be a flight risk or a danger to the community." (citation omitted)). Respondents rely on an expansive interpretation of two Supreme Court cases to support their contention that there would be no deprivation of due process caused by detaining Petitioner without a hearing. Resp'ts Br. at 15-17 (citing *Demore*, 538 U.S. 510, *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020)). The Sixth Circuit in *Lopez-Campos* rejected this argument.

> The government stretches the Supreme Court's holdings in *Thuraissigiam* and *Demore* beyond their logical breaking points. … *Thuraissigiam* merely reinforces our longstanding understanding that noncitizens "on the threshold of initial entry stand[ ] on a different footing" than those who have "passed through our gates." *Mezei*, 345 U.S. at 212, 73 S. Ct. 625. It does not control where, like in the instant case, noncitizens have resided within the United States for years.
>
> The government's interpretation of *Demore* is also not supportable. The *Demore* Court concluded that mandatory detention under § 1226(c) without an initial individualized bond determination did not violate a noncitizen's procedural due process rights. 538 U.S. at 531, 123 S. Ct. 1708. Crucially, *Demore* did not address the process due to noncitizens subject to § 1226(a)'s permissive detention scheme. *See id.* at 517-31, 123 S. Ct. 1708.

*Lopez-Campos*, 175 F.4th at 733-34. The Court finds the Sixth Circuit's reasoning instructive and declines to adopt Respondents' interpretation. Thus, the second factor weighs in favor of Petitioner.[4]

---

[4] The Court invited supplemental briefs regarding the validity of the Form I-200 and its impact on the due process analysis. ECF No. 22. Respondents assert that the existence of a valid arrest warrant decreases the risk of erroneous deprivation and provides increased due process. Resp'ts Supp. Br. at 3-4. Respondents argue – without citing any support – that "ICE's warrant for Petitioner's arrest provided an additional[] layer of executive review prior to detention that decreases the likelihood of an erroneous deprivation." *Id.* at 4. But the issuance of an arrest warrant does not afford the same due process protections as an adversarial hearing before an immigration judge. *See Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1174 (W.D. Wash. 2023) (describing the ICE parole process as insufficient to satisfy the second *Mathews* factor because it does not afford "the noncitizen an in-person adversarial hearing before a neutral decisionmaker . . . the ICE detention officer need not make any factual findings or provide their reasoning, and there is no apparent right to an administrative appeal"); *cf. A.B.J.C. v. Hermosillo*, No. 2:26-CV-00185-JNW, 2026 WL 497097, at *2 (W.D. Wash. Feb. 23, 2026) ("[E]ven if the I-200 were served, an arrest warrant is not the pre-deprivation notice and hearing before a neutral decisionmaker that due process requires[.]").

United States District Court
Northern District of California

Turning to the third *Mathews* factor, the Court agrees with numerous federal courts that have concluded that the government's interest in re-detaining a petitioner without a pre-deprivation hearing in these circumstances is low. *See, e.g.*, *Barbosa da Cunha*, 175 F.4th at 95 (finding no government interest that would "bear a 'reasonable relation' to any legitimate, non-punitive purpose") (quoting *Zadvydas*, 533 U.S. at 690); *Cordero Pelico v. Kaiser*, No. 25-CV-07286-EMC, 2025 WL 2822876, at *15 (N.D. Cal. Oct. 3, 2025) (noting that whether Respondents "conduct[ ] a pre-detention hearing – or, indeed, whether Petitioners are in detention or not – will not obstruct the removal process"). "In immigration court, custody hearings are routine and impose a minimal cost." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025) (citation modified). Thus, this final factor weighs in Petitioner's favor.

### 3.    Remedy

Because each of the *Mathews* factors weighs in his favor, Petitioner has raised a serious legal question as to his procedural due process claim, and is entitled to a bond hearing before an immigration judge prior to re-detention.

Respondents contend that even if the Court finds Petitioner's detention governed by § 1226(a), the hearing should occur post-detention (rather than pre-detention), and that such a post-deprivation hearing would provide constitutionally sufficient process.[5] Resp'ts Br. at 17. The Court is not persuaded. "[T]he Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Under ordinary circumstances, Petitioner is entitled to a pre-deprivation hearing. In some cases, exceptional circumstances may necessitate a post-deprivation hearing. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1035-36 (N.D. Cal. 2025) ("Certainly, there may be

---

[5] The cases cited by Respondents are distinguishable. In *Rodriguez Diaz*, the Ninth Circuit addressed the constitutionality of § 1226(a) as applied to the ongoing detention of a petitioner with a series of convictions who sought a *second* bond hearing before an immigration judge. 53 F.4th at 1194, 1203. And in *Gines-Hernandez v. Albarran*, the petitioner had been released on bond in his *criminal* case and subsequently absconded, thus violating his conditions of release. No. 26-cv-3348, 2026 WL 1113719, at *1, *3 (N.D. Cal. Apr. 24, 2026). The court found that "[u]nder these very specific facts, the Petitioner has not met his burden of demonstrating a 'serious question' as to whether the *Mathews* test requires a pre-detention bond hearing." *Id.* at *3 (emphasizing that this is "not the typical case").

United States District Court<br>Northern District of California

situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate."); *see also Hernandez Serrano v. Albarran*, No. 26-cv-03452-EKL, 2026 WL 1611876, at *3 (N.D. Cal. June 4, 2026) (finding no evidence of "urgent concerns" requiring immediate detention and a post-deprivation hearing, where petitioner had been arrested but not charged with a domestic violence incident seven months before).

Respondents have not shown that there are exceptional circumstances here. Although Petitioner was not encountered at the border at the time of his arrival, he has interacted with USCIS on numerous occasions and held lawful status for the great majority of his time in the United States, thus mitigating any concern that he is flight risk. *See* Form I-213 at 3-5. Similarly, beyond a series of traffic infractions, Avila Decl., Ex. 2 at 1, Petitioner has a limited criminal history, involving two misdemeanor arrests for possession of controlled substances, the most recent of which dated back to 2017. Form I-213 at 5. Neither arrest resulted in a conviction, *id.*, and it is undisputed that ICE took no action to detain Petitioner in the meantime. Accordingly, a pre-deprivation hearing is required to satisfy due process.

Lastly, the parties disagree about the validity of the administrative arrest warrant (Form I-200) dated May 21, 2026.[6] Avila Decl. Ex. 4. The Court declines to reach this question at this time given the Court's finding that Petitioner raises serious questions as to whether his procedural due process rights were violated.[7] *See* Pet'r Supp. Br. at 3 (stating that the parties "agree[] that the putative existence of an administrative warrant should be assessed as [a] claim independent of Petitioner's due process claim."); Resp'ts Supp. Br. at 2 ("As such, the existence of an arrest warrant in this case should be analyzed under the Fourth [A]mendment, not due process.").

---

[6] Specifically, the parties dispute whether the warrant was issued before or after the arrest occurred. Petitioner asks the Court to find, "on the present record, that Respondents have not shown Petitioner was arrest pursuant to a valid preexisting Form I-200." Pet'r Supp. Br. at 4. In the alternative, Petitioner requests the Court to issue the preliminary injunction on due process grounds irrespective of the warrant at issue, and permit Petitioner to take limited discovery for consideration on the final merits of the Petition." *Id.*

[7] Similarly, the Court declines to reach the issue of whether Petitioner has established a likelihood of success on the merits related to his substantive due process claim.

### B.    Remaining *Winter* Factors

Petitioner has met the other *Winter* factors.[8]  Without a preliminary injunction, the irreparable harm risked is the unconstitutional deprivation of Petitioner's liberty.  *See Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citing 11A *Wright & Miller's Federal Practice & Procedure* § 2948.1 (2d ed. 2004)).  In addition, the balance of the equities and the public interest, which are merged in this case because the government is the opposing party, tip sharply in Petitioner's favor.  "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted).  "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering[.]" *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (citation modified).

Finally, Respondents do not seek, and the Court will not require, security under Federal Rule of Civil Procedure 65(c) as there is "no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919-20 (9th Cir. 2003); *see also Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (agreeing Federal Rule of Civil Procedure 65(c) confers upon the district court the "discretion as to the amount of security required, if any").

## IV.    ORDER

For the foregoing reasons, it is hereby **ORDERED** that:

1.  Petitioner's request for a preliminary injunction is **GRANTED**, as modified.[9]

---

[8] Respondents do not address the remaining *Winter* factors in their briefs.

[9] Because Petitioner is not currently detained and Respondents are enjoined from re-detaining him without a pre-detention hearing, the Court does not reach Petitioner's request to enjoin his transfer to another district.  *See Hernandez Nieves v. Kaiser*, No. 25-CV-06921-LB, 2025 WL 2533110, at *5 (N.D. Cal. Sep. 3, 2025).  Should circumstances change, Petitioner may seek additional relief as appropriate.

United States District Court
Northern District of California

2. Respondents are **ENJOINED AND RESTRAINED** from re-detaining Petitioner in any form without notice and a pre-deprivation hearing before a neutral decisionmaker where the Government bears the burden of proving, by clear and convincing evidence, that changed circumstances render him a danger to the community or a flight risk, and that no conditions other than his detention would be sufficient to prevent such harms.

3. Respondents are **PROHIBITED** from imposing new conditions of release, such as electronic monitoring and in-person or virtual check-ins.

4. Respondents are **ORDERED** to return Petitioner's personal property confiscated upon his arrest, to the extent this was not already completed.

5. This Preliminary Injunction shall remain in force throughout the pendency of this action unless earlier modified by the Court.

6. The parties are **ORDERED** to meet and confer and, within 21 days of the date of this Order, propose a case schedule for resolving the remainder of this case, or submit a stipulation that the reasoning in the Court's order granting the preliminary injunction resolves the petition.

7. Petitioner's request for discovery is **DENIED** without prejudice. If Petitioner seeks further information pertaining to the arrest warrant, Petitioner must comply with Habeas Corpus Local Rule 2254-5, and file a motion for leave.

**IT IS SO ORDERED.**

Dated: June 30, 2026

_____
Eumi K. Lee
United States District Judge

13